UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME A. KENNEDY,                          Case No. 16-12444

        Plaintiff,                          Sean F. Cox
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Stephanie Dawkins Davis
                                            United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 15)**

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On June 29, 2016, plaintiff filed the instant suit seeking judicial review of

the Commissioner's decision disallowing social security disability benefits.  (Dkt.

1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Sean F. Cox referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claims.  (Dkt. 4).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 14, 15).

Plaintiff also filed a reply in support of his motion for summary judgment.  (Dkt.

16).  The cross-motions are now ready for report and recommendation.

### B.  Administrative Proceedings

On July 9, 2013, plaintiff filed claims for supplemental security income, alleging disability beginning June 23, 2013. (Tr. 16). The Commissioner initially denied plaintiff's disability application on August 20, 2013. *Id.* Thereafter, plaintiff requested an administrative hearing, and on October 21, 2014, he appeared with counsel before Administrative Law Judge ("ALJ") Ethel Revels, who considered his case *de novo*. (Tr. 30-79). In a February 18, 2015 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 13-26). The ALJ's decision became the final decision of the Commissioner on June 7, 2016, when the Social Security Administration's Appeals Council denied plaintiff's request for review. (Tr. 1-6).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and that this matter be **REMANDED** for further proceedings under Sentence Four.

## II.     FACTUAL BACKGROUND

### A.     ALJ's Findings

On the application date, plaintiff was 25 years old, which falls into the category of a "younger individual." (Tr. 25). Plaintiff, a resident of Detroit, Michigan, has past relevant work as an automobile mechanic helper and tire

technician. (Tr. 24). His alleged onset date for disability is June 24, 2013.

Plaintiff suffers from multiple sclerosis and depression. (Tr. 18). Plaintiff stopped

working in June, 2011 because he was laid off. (Tr. 163).

The ALJ applied the five-step disability analysis to plaintiff's claims and

found at step one that plaintiff did not engage in any substantial gainful activity

since the application date. (Tr. 18). At step two, the ALJ found that plaintiff had

the following severe impairments: multiple sclerosis and depression. *Id*. At step

three, the ALJ found that plaintiff did not have an impairment or combination of

impairments that met or equaled one of the listings in the regulations. (Tr. 19-20).

The ALJ determined that plaintiff has the following residual functional capacity:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform sedentary work as defined
> in 20 CFR 416.967(a) except the claimant is limited to
> simple, routine tasks such as those jobs at the SVP 1 or 2
> level because of occasional limitations in ability to
> maintain concentration for extended periods, but not off
> task for more than 10% of the work-day and occasional
> limitations in remembering or carrying out detailed
> instructions due to pain and depression. The claimant
> needs a job that does not require calculations. The
> claimant is limited to no climbing of ladders, ropes or
> scaffolds; occasional climbing of ramps and stairs,
> balancing, stooping, kneeling and crouching; and no
> crawling. The claimant must not work at hazardous
> heights or around dangerous machinery. The claimant is
> limited to no constant work with the general public. The
> claimant requires a sit/stand option, provided that he is
> not standing for more than 30 minutes at a time and is

> allowed to sit for 15 minutes before needing to stand
> again. The claimant requires the use of a cane for support
> and prolong ambulation.

(Tr. 20).  At step four, the ALJ determined that plaintiff could not perform his past

relevant work.  (Tr. 24).  At step five, the ALJ concluded that plaintiff could

perform jobs that exist in significant number in the economy and that he has not

been under a disability from the application date through the date of the ALJ's

decision.  (Tr. 25-26).

B.    Plaintiff's Claims of Error

Plaintiff contends that the ALJ's Step 3 analysis and determination of his

impairments is improper and not supported by substantial evidence.  The

plaintiff's main impairment is multiple sclerosis.  Plaintiff contends that the ALJ's

Step 3 determination neglects to properly analyze or explain why Plaintiff's

impairments do not meet or medically equal Listing 11.09.  Specifically, the ALJ

did not mention much less evaluate Listing 11.09 in her Step 3 analysis.  (Tr.

19-20).  In considering presumptive disability at Step 3 of the sequential

evaluation, "an ALJ must analyze the claimant's impairments in relation to the

Listed Impairments and must give a reasoned explanation of his findings and

conclusions in order to facilitate meaningful review."  *See Christephore v.*

*Comm'r Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing

*Reynolds v. Comm'r Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011)).  It is also

4

established that the failure by an ALJ to articulate his findings at Step 3 results in error. *See M.G. v. Comm'r Soc. Sec.*, 861 F.Supp.2d 846, 858-59 (E.D. Mich. 2012); *Reynolds*, 424 Fed. Appx. at 416. In *Reynolds*, the Sixth Circuit reversed the district court's affirmance of the ALJ's decision because the ALJ did not explain why the claimant did not meet or medically equal Listing 1.04. The ALJ "needed to actually evaluate the evidence, compare it to section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Reynolds* 424 Fed. Appx. at 416; *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("In this case, the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment."). In *Reynolds*, the ALJ's step three analysis indicated that "Claimant does not have an impairment or combination of impairments which, alone or in combination, meet sections 1.00 or 12.00 of the Listings." *Reynolds*, 424 Fed. Appx. at 415.

In this case, plaintiff says that the ALJ only goes into a discussion about Listing 12.04 regarding the Plaintiff's depression but completely ignores Listing 11.09. (Tr. 19-20). As a result, the ALJ leaves this Court to speculate as to which

of the multiple elements of Listing 11.09 the ALJ apparently felt were not satisfied or equaled. This is despite the multitude of evidence supporting a meeting or medically equaling of Listing 11.09(B). Specifically, a June 26, 2013 MRI of the brain noted extensive white matter lesions, some of which were chronic and demonstrated active demyelination. These findings were consistent with the diagnosis of multiple sclerosis. (Tr. 224). Next, the listing requires a marked limitation in physical functioning. In determining a "marked" limitation the Listing states: "[w]e do not define "marked" by a specific number of different physical activities or tasks that demonstrate your ability but by the overall effects of your neurological symptoms on your ability to perform physical activities on a consistent and sustained basis." Plaintiff contends that his neurological symptoms have a marked effect on his physical functioning as evidenced by the multiple follow-up visits after the initial diagnosis of multiple sclerosis. Specifically, plaintiff had numerous numbness episodes, decreased right upper extremity sensation, and needed a cane to assist with ambulation. (Tr. 230-231). An October 31, 2013 office visit notes painful muscle spasms and a gait disturbance. (Tr. 246-247). Plaintiff continued to report uncontrollable spasms, extremity weakness, leg pain, and multiple sclerosis symptoms through July 9, 2014. (Tr. 234, 236, 240, 243, 244). Furthermore, in addition to the medical evidence, plaintiff's testimony is in line with a marked limitation in physical functioning.

Plaintiff testified that he had multiple spasms, his leg "gives out", and that right side numbness happens in and out throughout the day about 4 times for 5 – 10 minutes. (Tr. 47-48). Further, the ALJ's decision to limit the Plaintiff to a sedentary RFC along with the plaintiff's need to use a cane also supports a marked limitation in physical functioning.

Next, Listing 11.09(B) requires a "marked" limitation in an area of mental functioning. In this case, plaintiff submits that he has a marked limitation in understanding, remembering, or applying information. Continued reports from Wayne State University Physician Group indicate the plaintiff has difficulty concentrating and with his memory. (Tr. 240, 250). According to plaintiff, it is evident plaintiff has marked limitations in this area as demonstrated throughout his hearing testimony. Plaintiff missed multiple appointments because of his poor memory. (Tr. 38). Indeed, plaintiff receives multiple reminders for appointments and is still forgetful of them. (Tr. 40-44). Plaintiff contends that these multiple instances of memory issues result in a marked limitation in understanding, remembering, or applying information.

In addition to the above-mentioned area of mental functioning, plaintiff also contends that he has a marked limitation in interacting with others. He is unable to appropriately interact with others. Due to his impairments he isolates himself in his room, has mood swings, and ends up not talking to people. (Tr. 57).

Furthermore, it was established that he cannot care for his own children alone. There is always another adult present to help care for his kids and it has been like this since June 2013. (Tr. 54-55).

Plaintiff acknowledges that it is well settled that this court will not overturn an ALJ's decision if the failure to articulate Step 3 findings is harmless. *See M.G. v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012). However, he argues that remand is appropriate in cases, such as this, where the district court's review of the ALJ's decision and the record evidence leaves open the possibility that a Listing is met or equaled. *See Reynolds*, 424 Fed. Appx. at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing"); *see also May v. Astrue*, 2011 WL 3490186, at *9 (N.D. Ohio June 1, 2011). Taking the entirety of the evidence and facts together, along with the objective and clinical evidence, symptoms, and testimony outlined above, it is unreasonable to conclude that the ALJ's articulation error was harmless, since the evidence could reasonably meet or equal the relevant Listing/Listings. Regardless of how the ALJ might ultimately decide plaintiff's claims, plaintiff asserts that this Court cannot say that, if the ALJ had made the required findings at Step 3, she necessarily would have found that plaintiff did not meet or medically equal the relevant Listing. In addition, if the ALJ does find that the evidence establishes

medical equivalence, plaintiff would be presumptively entitled to benefits. *See Christephore v. Comm'r Soc. Sec.*, 2012 WL 2274328, at \*6 (E.D. Mich. June 18, 2012). Because the ALJ's error is not harmless, plaintiff maintains that remand is appropriate.

Plaintiff further contends that the ALJ erred by failing to obtain an expert medical opinion regarding medical equivalency as required by SSR 96-6p, as outlined in *Stratton v. Astrue*, 2012 WL 1852084, \*11-12 (D. N.H. 2012). SSR 96-6p indicates that the ALJ should obtain an updated medical opinion from a medical expert where additional medical evidence is received that could modify the State agency medical consultant's finding that the impairment(s) was not equivalent in severity to any Listed impairment. *See* SSR 96-6p. In this case, the medical expert opinion was provided by Dr. Muhammad Ahmed on August 20, 2013. (Tr. 87). According to plaintiff, Dr. Ahmed's opinion cannot suffice considering he had only the first hospital visit in terms of medical evidence available for his review. (Tr. 81-88). Therefore, the ALJ should have obtained an updated medical opinion from a medical expert in concert with SSR 96-6p, and remand is warranted so that the ALJ can obtain the required expert opinion evidence regarding medical equivalency Listing 11.09(B).

C.    Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ's step-three finding that plaintiff's

impairments did not meet or medically equal Listing 11.09 finds support in the uncontroverted assessment of Dr. Ahmed, who considered the relevant Listing and found that the criteria were not satisfied.  (Tr. 19, citing Tr. 80, 84); *see* Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *3 (July 2, 1996) (a State agency consultant's signature on the SSA-831 Disability Determination and Transmittal form ensures that he considered the relevant Listings); *see also Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004) (the ALJ was not required to give reasons for accepting State agency opinions that claimant did not meet or equal Listing, where the claimant did not present any contrary evidence).  Dr. Ahmed's expert opinion that the condition did not satisfy a Listing carries more weight than plaintiff's lay speculation that it did.

The Commissioner points out that plaintiff did not argue that he satisfied Listing 11.09 at the administrative hearing, nor did he offer any evidence to rebut Dr. Ahmed's Listings opinion.  Instead, he waited until the ALJ had already written her decision to raise a Listings argument (compare Tr. 195-96 [pre-hearing brief], with Tr. 198-99 [Appeals Council brief]).  *See Malone v. Comm'r of Soc. Sec.*, 507 Fed. Appx. 470, 472 (6th Cir. 2012) (rejecting claimant's argument that the ALJ failed to address a particular listing, where the claimant did not argue before the ALJ that he had a listed impairment, and the ALJ's unfavorable step-three finding was supported by a medical opinion and other evidence that the

claimant could do light work); *see also Price v. Sec'y of Health & Human Servs.*, 1995 WL 413428, at *2 (6th Cir. July 12, 1995) ("Price did not refer to this listing before the ALJ, and consequently there is nothing for this court to review.").

As in *Malone*, the Commissioner asserts that plaintiff's step-three challenge fails because (1) the record includes a medical opinion addressing Listing 11.09; (2) the ALJ's discussion of the medical evidence supports her finding that plaintiff did not meet or equal any Listing, including Listing 11.09; and (3) plaintiff has not pointed to any evidence that would compel a contrary finding. *See Malone*, 507 Fed. Appx. at 472; *see also Bolden v. Comm'r of Soc. Sec.*, 2016 WL 1267166, at *7 (E.D. Mich. Feb. 10, 2016) (the ALJ was not required to mention Listing 11.09 at step three where his subsequent discussion of the medical records undermined a finding of disability under the Listing) (remanded on other grounds), adopted by 2016 WL 1259153 (E.D. Mich. Mar. 31, 2016); *Salter v. Comm'r of Soc. Sec.*, 2015 WL 1880393, at *10-11 (N.D. Ohio Apr. 24, 2015) (the ALJ's failure to discuss Listing 11.09 was harmless where he relied on a State agency consultant who found that the claimant did not meet or equal any Listing, and his step-four discussion confirmed that the claimant did not have sufficient neurological deficits to satisfy Listing 11.09A).

The Commissioner maintains that plaintiff cannot show that he met or medically equaled Listing 11.09 because there is insufficient evidence of

neurological dysfunction in the record. In fact, as the ALJ noted, the limited

objective clinical evidence in the record shows that plaintiff's balance, gait, and

motor functioning were generally intact during the relevant period. (Tr. 23; *see*

Tr. 230, 244, 247, 252). More specifically, she stated that "[t]he record does not

demonstrate the significant muscle weakness, fatigue, gait abnormalities, motor

dysfunction, vision problems, or cognitive changes that are associated with intense

and disabling MS symptoms." (Tr. 23); *see M.G. v. Comm'r of Soc. Sec.*, 861 F.

Supp. 2d 846, 859 n. 6 (E.D. Mich. 2012) ("[I]n some cases, factual findings

elsewhere in the narrative may suffice as factual findings at Step Three.").

Plaintiff's doctors pushed him to obtain neurological treatment for more than a

year since his original diagnosis, but he failed to do so for varying reasons, which

the ALJ reasonably discredited. (Tr. 24).

The Commissioner also points out that at the October 2014 hearing, the ALJ

left the record open for 30 days so that plaintiff could provide additional evidence.

(Tr. 78). Plaintiff, who was represented by counsel, did not supplement the

record. (Tr. 23). Although plaintiff suggests that the record supports a finding

that he had "marked" limitations consistent with Listing 11.09B, the

Commissioner points out that his argument rests entirely on his subjective

complaints. He does not point to any objective clinical findings that corroborate

his claims, as the Listing requires. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1,

§ 11.00B(1) ("We need both medical and non-medical evidence (signs, symptoms, and laboratory findings) to assess the effects of your neurological disorder."); 20 C.F.R. § 416.929(d)(3) ("[W]e will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment").  Even if plaintiff could rely exclusively on his own statements, the Commissioner says it is worth noting that his statements about his physical and mental functioning—e.g., that he spent most of his day lying in bed and could not even watch television (Tr. 51-52)—squarely contradict his fiancée's report that he played with his children, watched television with his family every day, cleaned the house every day, did yard work on Sundays, went outside, went shopping, and had no deficits in memory, task completion, or concentration.  (Tr. 177-84).  Given the dearth of supportive medical and non-medical evidence, the Commissioner insists that this is not a case where "the record evidence leaves open the possibility that a Listing is met or equaled," as plaintiff suggests, relying on *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011).  Therefore, the Commissioner maintains that no purpose would be served by remanding so that the ALJ could make explicit what is already implicit in her decision—namely, that the opinion evidence and sparse treatment records firmly establish that Plaintiff's MS and depression do not meet or medically equal any Listing.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)

(the harmless-error doctrine prevents courts from becoming "impregnable citadels of technicality"); *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) ("[R]emand is not essential if it will amount to no more than an empty exercise.").

Next, the Commissioner argues that the ALJ was not required to obtain an updated opinion on medical equivalence. According to the Commissioner, Dr. Ahmed's August 2013 opinion clearly satisfies SSR 96-6p's requirement that an opinion on equivalence "be received into the record as expert opinion evidence," and the ALJ specifically relied on that opinion. (Tr. 19; *see* Tr. 80, 84). See SSR 96-6p, 1996 WL 374180, at *3. The crux of plaintiff's argument is not that there was no medical opinion to support the ALJ's step-three finding, but rather that the ALJ should have obtained an updated opinion because Dr. Ahmed did not have the benefit of reviewing all of plaintiff's medical records. The Commissioner says that plaintiff's argument lacks merit because ALJs have broad discretion in deciding whether an updated equivalence opinion is necessary, and the ALJ did not abuse that discretion here. According to SSR 96-6p, an updated equivalence opinion is required when, "in the opinion of the [ALJ] or the Appeals Council," a judgment of equivalence may be reasonable or additional medical evidence may change a State agency consultant's earlier finding of no equivalence. SSR 96-6p, 1996 WL 374180, at *3-4. That provision gives the Commissioner inherent discretion to determine whether an updated opinion is necessary. *See Courter v.*

*Comm'r of Soc. Sec.*, 479 Fed. Appx. 713, 723 (6th Cir. 2012) (SSR 96-6p "requires that the ALJ obtain an updated medical opinion only when the ALJ believes that the evidence could change a consultant's finding that the impairment is not equivalent to a listed impairment").  According to *Courter*, plaintiff was required to show either (1) that the newer evidence satisfies Listing 11.09, or (2) that the ALJ herself believed that the evidence may have changed Dr. Ahmed's findings.  *Id*. at 723.  The Commissioner asserts that plaintiff has done neither.  The Commissioner points out that the ALJ reviewed the scant treatment records post-dating Dr. Ahmed's opinion and found that the objective findings and course of treatment were inconsistent with "intense and disabling MS symptoms" (Tr. 23-24).  Thus, the Commissioner maintains that the ALJ implicitly found that the later evidence did not undermine Dr. Ahmed's opinion to such a degree that an updated opinion on equivalence was necessary.  *See Courter*, 479 Fed. Appx. at 723.  According to the Commissioner, that was the ALJ's decision to make, not plaintiff's.  Therefore, remand is not warranted under SSR 96-6p.  *Id*.

D.     Plaintiff's Reply

While the Commissioner argues that since plaintiff did not argue the Listing at the administrative hearing, there is nothing for this court to review, plaintiff contends that the Commissioner incorrectly relies on non-binding unpublished opinions in *Malone* and *Price*.  According to plaintiff, these cases are not binding

15

and should not be persuasive because of the long standing law in this circuit that if "the record does not indicate that the issue was raised at the administrative level, we are not in a position to consider the issue." *Harper v. Sec'y of Health & Human Servs.*, 978 F.2d 260, 265 (6th Cir. 1992). *Harper* instructs that as long as an issue is raised at the administrative level, it is reviewable. Plaintiff raised the issue of Listing 11.09 in his brief to the Appeals Council and it is a part of the administrative record. (Tr. 198). Furthermore, the reason, at least in part, that plaintiff raised this issue to the Appeals Council is because the ALJ did not address Listing 11.09 in her decision. (Tr. 19-20). Moreover, the Commissioner concedes the point that the ALJ did not expressly mention Listing 11.09. Therefore, plaintiff says that the argument that the Listing 11.09 issue should not be reviewed is without merit.

Plaintiff urges the Court to reject the Commissioner's argument that the ALJ did not need to evaluate Listing 11.09 because there is a medical opinion addressing it. In support, plaintiff points out that this evaluation merely indicates the listing was considered without a discussion of the listing. (Tr. 84). And, plaintiff says that the ALJ's discussion of the medical evidence as supportive of her findings is not enough to satisfy meaningful review of his claim. Finally, plaintiff asserts that, contrary to the Commissioner's arguments, he pointed to a multitude of evidence suggesting that he meets Listing 11.09 or medically equals

it.  Although there are some inconsistences in the record, plaintiff asserts that does not excuse a lack of meaningful review.

## III.   DISCUSSION

### A.   Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If plaintiff is not performing substantial

gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

B.    Analysis

As an initial matter, the Commissioner's argument that the plaintiff's Step 3 Listing error claim is foreclosed because he failed to raise it before the ALJ and did not raise it until the Appeals Council level is easily dismissed. As recently explained in *Austin v. Comm'r of Soc. Sec.*, 2017 WL 2644099, at *4 (W.D. Mich. June 20, 2017), the claim of issue waiver is contrary to the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103, 112 (2000), which rejected issue exhaustion in Social Security appeals:

> [W]e hold that a judicially created issue-exhaustion requirement is inappropriate. Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues.

*Sims*, 530 U.S. at 112. "The Council, not the claimant, has primary responsibility

for identifying and developing the issues." *Id.* And, in any event, plaintiff did raise the issue before the Appeals Council. It makes little sense to require a plaintiff to raise the issue of whether his MS met the Listing for MS before the ALJ when it can be assumed that the ALJ would, as a matter of course because he is obligated to do so, consider this specific Listing when plaintiff's primary impairment is, in fact, MS.

Here, plaintiff asserts that the ALJ's Step 3 analysis is flawed in both the analysis of whether he met the Listing 11.09 and whether he equaled Listing 11.09, while the Commissioner maintains that plaintiff's Listing claim fails because (1) he has not met his burden of establishing that he can meet all the elements of Listing 11.09, (2) there is an opinion from Dr. Ahmed on equivalency; and (3) the ALJ has discretion on whether to obtain an updated medical opinion. In the view of the undersigned, in the circumstances of this case, neither party gets it exactly right in analyzing the Step 3 issues in this case because there was a failure to consider plaintiff's impairments in combination by the ALJ and the state agency physician.

Plainly, the ALJ expressly determined that plaintiff's mental impairment (depression) did not meet Listing 12.04 (as is within her purview). (Tr. 19-20). However, she went on to determine that plaintiff's depression did not meet or medically equal the Listing, without the benefit of any medical opinion on

equivalency.  In addition, while the ALJ had an opinion, albeit an outdated one, on the issue of whether plaintiff met or equaled Listing 11.09, the ALJ did not expressly address this Listing in her decision.  The ALJ's analysis in this regard is as follows:

> Although the claimant has the severe impairments listed above, the impairments, or combination of impairments, do not meet or medically equal the specific criteria for any impairment listed in Appendix 1, Subpart P, Regulations No. 4. The medical opinion of the State agency consultative physicians, all of whom considered the relevant Listings, support this finding.

(Tr. 19).  Notably, there is only one state agency physician in this record and he only considered Listing 11.09, which is not the only relevant Listing.  Perhaps an argument could be made that the error regarding Listing 11.09 is harmless,[1] but when combined with the failure to obtain an equivalency opinion on plaintiff's severe impairment of depression, the ALJ's resulting approach misses a critical component of the equivalence analysis, which includes the requirement to assess severe impairments in <u>combination</u>.  If a claimant has more than one impairment (as plaintiff does here), none of which meet a listing on their own, the Commissioner must determine whether "the combination of impairments is

---

[1]  *Cf. Oldenkamp v. Comm'r of Soc. Sec.*, 2015 WL 505805 (W.D. Mich. 2015) (Rejecting the Commissioner's attempt to rehabilitate ALJ's defective Listing analysis, because the Court was not going to conduct the analysis that the ALJ should have conducted in the first place, which requires credibility determinations and the weighing of evidence.).

medically equal to the listed impairment." 20 C.F.R. § 404.1526(b)(3). And, the

Commissioner is required to have a medical opinion to support this analysis.

Nothing in Dr. Ahmed's opinions set forth in the Disability Determination

Explanation (DDE) or on the Disability Determination and Transmittal (DDT)

form suggest that he considered depression as a severe impairment, that he

considered Listing 12.04 at all, or that he considered whether plaintiff's

combination of impairments medically equaled any Listing.[2] *See e.g.*, *Barnett v.*

*Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment

equals a listing is a medical judgment, and an ALJ must consider an expert's

opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*,

1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a

medical expert is required before a determination of medical equivalence is

made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011 WL 4841091,

at *1 (E.D. Wis. Oct. 21, 2011) (warning that an ALJ who makes a step-three

---

[2] The expert opinion requirement for equivalency can be satisfied by a signature on the Disability Determination Transmittal Form. *Stratton*, 987 F.Supp.2d at 148 (citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form).")). In the instant record, there is a Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff's impairment of MS, but there is no such form as to plaintiff's severe mental impairment of depression. The DDT here was signed by "Muhammad Mian MD" who considered Multiple Sclerosis only. (Tr. 80). According to the DDE, which has the same date as the DDT (8/20/13), it was signed by Muhammed Ahmed, MD. (Tr. 87). The parties have not suggested that there are two different medical advisors in this case, and thus, the Court assumes they are the same.

equivalence determination without expert opinion evidence runs the risk of impermissibly playing doctor); *Stratton v. Astrue*, 987 F.Supp.2d 135, 148 (D. N.H. 2012) (SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter.) (citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted)).

Indeed, the applicable regulation requires that an opinion by a medical consultant will be considered in making such an assessment:

> When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding. We do not consider your vocational factors of age, education, and work experience (see, for example, § 404.1560(c)(1)). *We also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner.* (See § 404.1616.)

20 C.F.R. § 404.1526(c) (emphasis added). Not only is there no medical opinion to support the ALJ's equivalency analysis on plaintiff's mental impairment (or combination of impairments), but nothing in the ALJ's analysis suggests that he

considered plaintiff's impairments in combination.

The undersigned finds the Commissioner's reliance on *Malone* unpersuasive. As explained in *Wilcox v. Comm'r of Soc. Sec.*, 2014 WL 4109921, *4 (E.D. Mich 2014) (Duggan, J.), *Malone* is distinguishable where, as here, the ALJ failed to consider the severity of plaintiff's impairments in combination, as prescribed by 20 C.F.R. § 416.920(c). *See also* 42 U.S.C. § 423(d)(2)(B) ("In determining whether an ... impairment or impairments are of a sufficient medical severity such that [a finding of disability would be warranted], the Commissioner ... shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."). *Bolden* is also distinguishable because, while the Court determined that the ALJ's lack of supporting analysis regarding Listing 11.09 was harmless, based on the ALJ's subsequent discussion of the medical records, the lack of an opinion on equivalency still required remand in light of the multitude of severe impairments accompanying the claimant's MS. *Id*. at *8. *Salter* is also readily distinguishable because while the plaintiff there suffered from both MS and depression, the decision is silent on the issue of whether the state agency physician who evaluated the plaintiff's impairments or the ALJ considered those impairments in combination when evaluating equivalency at Step 3.

The caution in *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655-58 (6th

Cir. 2009) that "courts generally should exercise caution in conducting harmless error review" of a step three finding because harmlessness "may be difficult, or even impossible, to assess" applies here because neither the ALJ nor this Court possesses the medical expertise to interpret the significant medical evidence in the record to determine if plaintiff's impairments, in combination, equal any of applicable listings. *See Allor v. Colvin*, 2016 WL 7650798, at *6 (E.D. Mich. Nov. 28, 2016) (Stafford, M.J.), report and recommendation adopted 2017 WL 2350061 (E.D. Mich. May 31, 2017) (Cox, J.).

For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's impairments in combination. Given that the opinions of a medical advisor must be obtained, plaintiff's credibility and RFC will necessarily have to be re-assessed in full after such an opinion is obtained.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings pursuant to Sentence Four.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 25, 2017        s/Stephanie Dawkins Davis
                                     Stephanie Dawkins Davis
                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

       I certify that on August 25, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                     s/Tammy Hallwood
                                     Case Manager
                                     (810) 341-7887
                                     tammy_hallwood@mied.uscourts.gov